BARILLA, Appellant,

v.

PATELLA et al., Appellees.

[Cite as *Barilla v. Patella* (2001), 144 Ohio App.3d 524.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78128.

· Decided July 12, 2001.

*Jody L. Shumaker–Barilla* and *James V. Barilla*, for appellant.

*Arter & Hadden, John B. Lewis* and *David S. Winston,* for appellees.

JAMES D. SWEENEY, Presiding Judge.

Plaintiff-appellant John A. Barilla ("Barilla") appeals from the granting of summary judgment in favor of defendants-appellees Nick Patella ("Patella"), Edward Jindra ("Jindra"), and The Higbee Company, d.b.a. Dillard Department Stores, Inc. ("Dillard"). For the reasons adduced below, we affirm.

A review of the record on appeal indicates that in early 1997, plaintiff was a furniture salesman at defendant-Dillard's downtown Cleveland department store ("the store") located in a shopping/office complex known as Tower City. Defendant–Patella was also a furniture salesman at the store. Defendant–Jindra was the "big ticket coordinator" at that same store and was plaintiff's indirect supervisor.

On March 26, 1997, there were two Henredon cocktail tables on the furniture floor for sale, one item more damaged than the other, and each priced differently in relation to reflect the severity of damage to the piece. These two tables had the same stock-keeping unit numbers, a.k.a. SKU's, because they were the same manufacturer, same model, and same style, but had differing tag numbers to identify them in the store's computer. That day, a customer (Lisa McCormick) appeared at the furniture department at the store and asked for plaintiff's assistance. Plaintiff, having left for the day, was unavailable, so Patella offered his assistance. The customer pointed to the greater damaged Henredon cocktail table in the display area which was on sale for $399 and claimed that plaintiff, on

March 25, 1997, had promised to sell her a similar cocktail table, which was in better condition and marked for sale at $1,099 than the greater damaged floor sample, but at a reduced price. Patella, who was not aware of this arrangement between plaintiff and the customer, suggested that the customer return later and deal with the plaintiff. On March 27, 1997, plaintiff obtained authorization from his direct superior (Debra Houser, who was also Patella's direct supervisor) for the sale of the greater damaged table only, to the customer for the price of $349. When informed of this authorization, the customer asked if she could obtain the other table for the same price of $349. The sale order was ultimately completed over the telephone between the customer and plaintiff on March 27, 1997. The sales receipt for the transaction, which was rung up by plaintiff, identified a sale price of $399 (not including sales tax) for the table obtained by the customer. Store records later confirmed that the "badly damaged" table which Houser authorized to be sold at $349 was still in stock and remained on the selling floor.

Later that day, Patella observed plaintiff moving a cocktail table from the selling floor to the elevator bay. The table being moved was not the greater damaged table, but was the less damaged table. Patella returned to the selling floor area and found the greater damaged table bearing a selling price of $1,099. Patella, who ultimately testified that he did not see plaintiff switching price tags on the tables, and had only seen plaintiff move one of the tables nearer the elevator on the floor (which is not the same as carrying the table to the customer pickup area located on the rear dock of the store), concluded that plaintiff had switched the tables and price tags. Patella reported his suspicions to Houser, and also reported these observations to the store's anonymous caller tip line on March 28, 1997. Appellant concedes that the customer took possession of the less damaged table on March 28, 1997.

At the request of Houser, Patella completed a written statement on April 4, 1997, concerning the matter.[1] This Patella statement accused plaintiff of switching tables and price tags relative to the tables in question. Jindra, under orders from his supervisor (District Sales Manager David Kolmer) to investigate the alleged misconduct by plaintiff, interviewed Houser and Patella, but did not interview plaintiff or the customer. During this investigation Jindra also communicated with the store's operations manager, Steven Knight. Houser provided a written statement to Jindra. Patella's previously provided written statement was also reviewed by Jindra. On April 18, 1997, Jindra and Knight met with plaintiff.

---

1. This statement states in pertinent part the following:

"On the next morning 3/27/96 [*sic*] John rang up the slip on the table at $399.00. He then took the damaged table from the clearance area and switched tables and tags with the new table on our selling floor, which was priced at $1099.00. I saw him carry the new table to the pick up area. 2 other assocs. also saw this table. Nick Patella 4–4–97."

Following this meeting, plaintiff, who had a prior history of store discipline for dishonesty for which he was warned that future misconduct would result in his dismissal, was terminated on April 8, 1997, on the basis of dishonesty for having sold the less-damaged cocktail table at a reduced price without prior authorization.

Following his termination, plaintiff filed an application for unemployment compensation. See *Barilla v. Higbee Dept. Stores* (Apr. 19, 2000), Lorain App. No. 98CA007176, unreported, 2000 WL 422410. This application was initially approved by the Administrator of the Ohio Bureau of Employment Services ("OBES"),[2] and the employer, Dillard, appealed that decision alleging dishonesty by the plaintiff relating to the sale of the table. The matter came on for hearing before the OBES in October, November and December 1997. The hearing officer reversed the administrator's decision on December 15, 1997, and denied plaintiff's application. Barilla appealed this determination to the commission, which disallowed the appeal on January 22, 1998. Barilla appealed this decision on February 18, 1998, to the Lorain County Common Pleas Court, which reversed the commission's decision on July 10, 1998, and found in favor of Barilla. The administrator then appealed that decision to the Ninth Appellate District Court of Ohio (Lorain), which affirmed the judgment of the trial court, allowing unemployment benefits for Barilla. *Id.*

While the OBES proceedings were pending, Barilla filed the action *sub judice* in the Cuyahoga County Common Pleas Court, alleging four tort claims: (1) defamation, (2) negligent identification, (3) tortious interference with a business relationship, and (4) wrongful termination based on age discrimination in violation of R.C. 4112.14.

Plaintiff filed his motion for summary judgment on December 30, 1999. Defendants filed their motion for summary judgment on March 13, 2000. The trial court granted the defendants' motion on all causes of action on May 19, 2000.

Barilla's timely appeal from the final order granting summary judgment presents six assignments of error. Prior to addressing these assignments, we note the following standard of review for the granting of a motion for summary judgment:

"The Ohio Supreme Court has established that summary judgment under Civ.R. 56 is proper when:

---

2. On July 1, 2000, the Bureau of Employment Services ceased to exist. Its functions and responsibilities were transferred to the Department of Job and Family Services or the Department of Commerce, as appropriate. See 1999 H.B. No. 470; R.C. 4141.01 *et seq.* Within the Department of Job and Family Services was created an Unemployment Compensation Review Commission. R.C. 4141.06.

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 [1379–1380]; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327 [4 O.O.3d 466, 471–472], 364 N.E.2d 267 [273–274].

"The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986 [1986]), 477 U.S. 317, 330, 106 S.Ct. 2548 [2556], 91 L.Ed.2d 265 [278]; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798 [801–802]. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138 [139–141].

"However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095 [1099]; *Celotex, supra*, at 322 [106 S.Ct. at 2552, 91 L.Ed.2d at 273]. In accordance with Civ.R. 56(E), 'a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.' *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513 [515]." *Bisbee v. Cuyahoga Cty. Bd. of Elections* (Mar. 1, 2001), Cuyahoga App. No. 77629, unreported, 2001 WL 204174.

The first assignment of error provides the following:

"I

"The trial court erred as a matter of law and abused its discretion in granting defendants' motion for summary judgment as to the alleged cause of action of tortious interference with a business relationship."

In this cause of action, Barilla alleges that Patella interfered with Barilla's business relationship with Dillard by giving false and misleading reports of alleged misconduct on the part of Barilla to Dillard's supervisory personnel, causing Barilla's termination. It is the initial communications between Patella and the employer, including Patella's written statement, that started the entire disciplinary process, that is at issue in this cause of action; the use of these initial communications in the unemployment proceedings is not the issue.

The tort of interference with business relationships was aptly summarized in *Miller Bros. Excavating, Inc. v. Stone Excavating, Inc.* (Jan. 16, 1998), Greene App. No. 97–CA–69, 1998 WL 12646, as follows:

"The tort of interference with a business relationship is well established. 'The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.' (Citations omitted.) *Wolf v. McCullough–Hyde Memorial Hosp., Inc.* (1990), 67 Ohio App.3d 349, 355, 586 N.E.2d 1204 [1208–1209]. 'The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another.' (Citations omitted.) *A & B—Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 [1294]. 'The basic principle of a "tortious interference" action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby.' *Wolf,* 67 Ohio App.3d at 355, 586 N.E.2d 1204 [at 1208–1209], citing *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238."

▬▬ Appellees argue three bases to avoid the application of this cause of action. First, appellees posit that Patella's communications to the employer concerning alleged misconduct by Barilla were subject to a qualified privilege. This qualified privilege arises from communications "made in good faith * * * between an employer and an employee, or between two employees concerning a third employee * * *." *Horsley v. Wal–Mart, Inc.* (Dec. 23, 1997), Lawrence App. No. 97CA17, unreported, 1997 WL 799492, at * 5, citing *Evely v. Carlton Co.* (1983), 4 Ohio St.3d 163, 165, 4 OBR 404, 406–407, 447 N.E.2d 1290, 1292–1293, and *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 81, 603 N.E.2d 1126, 1131–1132. In the present action, the communications of Patella were made within the course and scope of his employment with Dillard's concerning a matter of common interest, to wit, possible misconduct by Barilla, a coworker, in the sale of a table. *Id.* Accordingly, the qualified privilege applies. In order to overcome this qualified privilege, Barilla must demonstrate that Patella's initial communications of alleged misconduct to the employer were made with actual malice. In other words, Barilla must demonstrate that Patella (the party who allegedly interfered with Barilla's business relationship with Dillard's) acted with knowledge that these communications of his were false or that he acted with reckless disregard as to the truth of the falsity. Given the fact that Patella later testified that the inculpatory statements made by him concerning having seen Barilla switch tables and tags, were not true, we must conclude that there is a genuine issue of material fact as to whether actual malice existed at the time those communications were initially made so as to defeat the qualified privilege.

The second basis used by the appellees to affirm the granting of summary judgment on this tort claim is that Patella was acting within the scope of his duties in reporting his observations of alleged misconduct to the employer. For this proposition, appellees cite to *Anderson v. Minter* (1972), 32 Ohio St.2d 207, 213, 61 O.O.2d 447, 450, 291 N.E.2d 457, 461. Concurrently, the third basis, which also cites *Anderson*, argues that the tort claim of interference with business relationship is not actionable in the present case because Patella is a coemployee of Barilla.

In *Anderson*, an employee (defendant Tuttle), albeit supervisory, allegedly maliciously induced her employer through its representative (defendant Minter) to discipline a subordinate coemployee (plaintiff Anderson). The disciplined coemployee sued, claiming interference with her "employment" relationship between the disciplined employee and the employer. The Supreme Court of Ohio determined that no cause of action for interference with the employment relationship was stated by the disciplined employee (Anderson) against her coemployee (Tuttle) based on the public policy consideration of fostering "the unflinching discharge" of duties by "the most resolute, or the most irresponsible," employees. *Id.*, 32 Ohio St.2d at 213, 61 O.O.2d at 450, 291 N.E.2d at 461, citing *Gregoire v. Biddle* (1949), 177 F.2d 579, 581.[3] Based on *Anderson*, no cause of action for interference with business relationship can be maintained by Barilla against Patella, whether Patella was "resolute" or "irresponsible" in making his initial communications to the employer which ultimately resulted in Barilla's termination. Accordingly, the trial court did not err in granting summary judgment in favor of defendants on the claim of interference with business relationship.

The first assignment of error is overruled.

The second assignment of error provides the following:

"II

"The trial court erred as a matter of law and abused their. [*sic*] discretion in granting defendants' motion for summary judgment as to the alleged cause of action of negligent identification."

---

**3.** The *Gregoire* passage, originally authored by Judge Learned Hand and cited in *Anderson*, was stated as follows by Justice Leach in the *Anderson* opinion:

" '* * * The justification for * * * [denying recovery] is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.' "

█ The tort of negligent identification, or misidentification, was recognized in *Wigfall v. Society Natl. Bank* (1995), 107 Ohio App.3d 667, 669 N.E.2d 313. The elements for the cause of action exist "for persons who are negligently improperly identified as being responsible for committing a violation of law and who suffer injury as a result of the wrongful identification. As with any cause of action sounding in negligence, there must be a showing of a duty, a breach of that duty, proximate cause and injury before the person improperly identified for committing a crime can establish a valid claim." *Id.* at 673, 669 N.E.2d at 316–317; see, also, *Mouse v. The Cent. Sav. & Trust Co.* (1929), 120 Ohio St. 599, 167 N.E. 868; *Walls v. Columbus* (1983), 10 Ohio App.3d 180, 10 OBR 251, 461 N.E.2d 13; *Hersey v. The House of Ins.* (Feb. 23, 2001), Lucas App. No. L–00–1131, unreported, 2001 WL 173080.

█ In the present action, Barilla was not reported to law enforcement authorities as having committed a crime, was not arrested or imprisoned, and suffered no injury from actions taken by law enforcement authorities. Instead, the actions of which Barilla complains were entirely within the private employment sector. Accordingly, the cause of action is not applicable, and the trial court did not err in granting summary judgment on this claim.

The second assignment of error is overruled.

The third assignment of error provides the following:

"III

"The trial court erred as a matter of law and abused its discretion in granting defendants' motion for summary judgment as to the alleged cause of action of defamation."

█ In this assignment, Barilla claims that he was defamed when the defendants, during the evidentiary hearing conducted by the OBES in late–1997, entered into evidence, and testified to, the written statement authored by Patella on April 4, 1997, which allegedly contained untruths concerning Barilla switching the tables and price tags.

█ Communications made during unemployment proceedings, which are quasi-judicial in nature, are subject to an absolute privilege, and may not be used in subsequent actions. See *Saini v. Cleveland Pneumatic Co.* (May 14, 1987), Cuyahoga App. No. 51913, unreported, 1987 WL 11098, at * 4, citing *Ferguson v. Rehm* (July 11, 1984), Wayne App. No. CA1921, unreported, 1984 WL 5171, and *Wolf v. First Natl. Bank of Toledo* (1980), 20 O.O.3d 262; R.C. 4141.21; see, also, *Horsley v. Wal–Mart, Inc., supra*, 1997 WL 799492, and *Pasanovic v. Am. Gen. Finance, Inc.* (Sept. 17, 1992), Franklin App. No 92AP–651, unreported, 1992 WL

229517. Accordingly, the trial court did not err in granting summary judgment on this defamation claim.

The third assignment of error is overruled.

The fourth assignment of error provides the following:

"IV

"The trial court erred as a matter of law and abused its discretion in granting defendants' motion for summary judgment as to the alleged cause of action of wrongful termination."

The claim of wrongful termination is premised on age discrimination in violation of R.C. 4112.02(A). The standard applicable to a claim of age discrimination was recently iterated by this court in *Bisbee v. Cuyahoga Cty. Bd. of Elections* (Mar. 1, 2001), Cuyahoga App. No. 77629, unreported, 2001 WL 204174:

"To set forth a prima facie case of age discrimination in an employment discharge action, [the employee] must show:

"(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. *Mauzy v. Kelly Servs.* (1996), 75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276, citing *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 147–148 [6 OBR 202, 202–204], 451 N.E.2d 807, 809.

"Once a prima facie case of discrimination is established, then appellees may overcome the presumption by going forward with a legitimate, nondiscriminatory reason for the discharge. [The employee] must then show that appellees' rationale was only a pretext for unlawful discrimination. See *Mauzy*, 75 Ohio St.3d at 582, 664 N.E.2d at 1276. See, also, *Wilmot v. Forest City Auto Parts*, (June 22, 2000), Cuyahoga App. No. 75945, unreported, 2000 WL 804616, 2000 Ohio App. LEXIS 2734. [Explanatory change added.]" See, also, *Reeves v. Sanderson Plumbing Products, Inc.* (2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105.

To be considered a pretext, the stated nondiscriminatory reason must be shown to be false and that discrimination was the real reason. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333, unreported, 2001 WL 60035, citing *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 510–511, 113 S.Ct. 2742, 2748–2750, 125 L.Ed.2d 407, 418–419. In other words:

" 'Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judg-

**536**

ment.' *Branson v. Price River Coal Co.* (C.A.10, 1988), 853 F.2d 768, 772. To avoid summary judgment, appellant was required to produce some evidence that Pinkerton's proffered reasons were factually untrue. *Reeves v. Sanderson Plumbing Products, Inc.* (2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105." *Powers,* 2001 WL 60035, at * 4.

In the present case, Barilla, who was fifty-five years of age at the time of his termination, cannot demonstrate a prima facie case of age discrimination because he cannot satisfy the fourth element of the standard, to wit, that "he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." The record demonstrates that Barilla was not replaced by a person outside the protected class (to wit, persons under forty years of age); he was replaced by Mr. Urbancik, who was fifty years of age at the time Barilla was terminated. Also, there is no evidence that the employer, as a result of discharging Barilla, made the decision to retain a person not belonging to the protected class. Appellant points out that two of the junior salesmen, each under the age of forty, still worked for Dillard and that some of his former duties were assigned to these two men. However, it is not shown that Barilla's termination caused the employer to retain these two men on the payroll or, concurrently, that had Barilla not been discharged, these two men would have been terminated or reassigned. Even if a prima facie case is arguably demonstrated, the claim does not survive because the employer demonstrated a nondiscriminatory explanation for the termination (to wit, an allegation of misconduct) and it has not been shown by Barilla that the employer's explanation for the termination was a pretext or that the termination proceedings were motivated by intentional age discrimination. Accordingly, the trial court did not err in granting summary judgment on this claim.

The fourth assignment of error is overruled.

The fifth assignment of error provides the following:

"V

"The trial court erred as a matter of law and abused its discretion in its application of ORC § 4141.21."

In this assignment, appellant argues that the communications made during the OBES proceedings are admissible for use in a separate civil action, such as the present one involving claims of defamation and interference with business relationship, under R.C. 4141.21. Appellant's argument is premised on the belief that the Unemployment Compensation Review Commission is not part of OBES. Further, appellant believes that because the former R.C. 4141.21 prohibits the further use of only communications furnished to OBES, the commu-

nications in issue were admissible in other separate actions because they were furnished through proceedings before the Unemployment Compensation Review Commission when Barilla appealed the hearing officer's denial of his unemployment application. Appellant cites no cases supporting this assertion. The question that is controlling is whether the Unemployment Compensation Review Commission is a separate agency or a part of OBES.

The version of R.C. 4141.21 in effect at the time of the filing of this action stated:

"Except as provided in sections 4141.16, 4141.161 [4141.16.1], 4141.162 [4141.16.2], and 4141.163 [4141.16.3] of the Revised Code, and subject to section 4141.43 of the Revised Code, the information maintained by the administrator of the bureau of employment services or furnished to the administrator by employers or employees pursuant to this chapter *is for the exclusive use and information of the bureau of employment services in the discharge of its duties* and shall not be open to the public or be used * * * in any action or proceeding pending therein, or be admissible in evidence in any action, other than one arising under those sections. * * *" (Emphasis added.)

If the review commission is part of OBES (or its successor), R.C. 4141.21, the information of which appellant complains is "for the exclusive use and information of the bureau of employment services in the discharge of its duties" and cannot be used in a separate civil action.

This court had cause to review a similar factual pattern involving an unemployment application in *Pandi v. Marc Glassman, Inc.* (May 11, 1995), Cuyahoga App. No. 68076, unreported, 1995 WL 277109, wherein a terminated employee applied for unemployment benefits, was initially denied benefits, then sought reconsideration (which was also denied), then appealed that reconsideration decision to the "Bureau's Board of Review." It is obvious that the "Board of Review" is synonymous with the review functions of the Unemployment Compensation Review Commission. In *Pandi,* this court, with knowledge that the same information, was before the initial hearing officer and the review board, stated:

"Under R.C. 4141.21, the information furnished to the Ohio Bureau of Employment Services for the purpose of obtaining unemployment insurance is privileged information, and not admissible in a separate civil action."

We see no reason not to apply the privilege contained in R.C. 4141.21 to the review commission.

As for the review commission not being a part of the former OBES, we note that the present Revised Code includes both the Bureau of Job and Family Services (the successor to the OBES) and the review commission under R.C. Chapter 4141. Also, we note that the review commission submits its proposed

annual budget to the director of the Bureau of Job and Family Services for approval. R.C. 4141.06. This is a clear indication that the review commission is treated by the General Assembly as a department within the Bureau of Job and Family Services. Otherwise, why would the review commission budget be subject to the review of the director of the Bureau of Job and Family Services?

Accordingly, the trial court did not err in its review of the motion for summary judgment in the event that it failed to admit into evidence the communications which were before the review commission.

The fifth assignment of error is overruled.

The sixth assignment of error provides the following:

"VI

"ORC § 4141.21 in its application herein is unconstitutional as it violates the plaintiff's right to due process."

In this assignment, appellant argues that his right to due process is circumscribed by the evidentiary prohibition contained in R.C. 4141.21, which prohibits in a separate civil action the use of communications made in a OBES/Bureau of Job and Family Services proceeding.

In making this argument, appellant requests that we revisit our ruling in *Bruce v. Pavlik* (Apr. 17, 1997), Cuyahoga App. No. 70852, unreported, 1997 WL 186823 (information furnished to the OBES was privileged information subject to nondisclosure in later civil actions under R .C. 4141.21), and, based on the allegedly unconstitutional nature of R.C. 4141.21, comes to an opposite conclusion regarding the admissibility of the communications in question. This constitutional argument was not raised before the trial court and, pursuant to our discretion in invoking the application of waiver, need not be addressed at this time on appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus.

The sixth assignment of error is overruled.

*Judgment affirmed.*

Patricia A. Blackmon and Ann Dyke, JJ., concur.