[Cite as *Winters Law Firm, L.L.C. v. Caryn Groedel & Assocs., Co., L.P.A.*, 2013-Ohio-5260.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99922**

# WINTERS LAW FIRM, L.L.C.

PLAINTIFF-APPELLEE

vs.

# CARYN GROEDEL & ASSOCIATES CO., L.P.A., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-775860

**BEFORE:** Kilbane, J., S. Gallagher, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEYS FOR APPELLANTS**

Melisa M. Mazanec-Fisco
Caryn M. Groedel
Caryn Groedel & Associates, L.P.A.
31340 Solon Road
Suite 27
Cleveland, Ohio 44139

**ATTORNEY FOR APPELLEE**

Joseph F. Scott
17410 Dorchester Drive
Cleveland, Ohio 44119

MARY EILEEN KILBANE, J.:

**{¶1}** Defendants-appellants, Caryn Groedel & Associates, L.P.A., Co., and Caryn Groedel (collectively referred to as "Groedel"), appeal the trial court's decision granting the motion to stay proceedings pending arbitration filed by plaintiff-appellee, Winters Law Firm, L.L.C. ("Winters"). For the reasons set forth below, we affirm.

**{¶2}** In February 2012, Winters filed a "complaint to compel arbitration/complaint for tortious interference" against Groedel. The complaint contained two causes of action — breach of contract and tortious interference with business relationships. The complaint arises from a co-counseling agreement between the parties, in which they agreed to jointly represent clients from September 2011 to August 2012 in all wage and hour cases under the Fair Labor Standards Act.

**{¶3}** Winters amended his complaint in June 2012. The amended complaint, also titled "complaint to compel arbitration/complaint for tortious interference" again set forth a breach of contract claim and tortious interference with business relationships claim. The amended complaint alleges that under the agreement

> the Parties agreed to attempt to resolve any dispute under the Agreement by informal resolution; and if that failed, to resolve the dispute by meeting with a neutral third party; and if that failed, through binding arbitration.

The complaint alleges that disputes had arisen, and that Winters has met the "conditions precedent to invoke the arbitration agreement."

**{¶4}** Groedel answered both the original and amended complaint. In response to the original complaint, Groedel added Ryan Winters as a new-party defendant and filed counterclaims for breach of contract, frivolous conduct, and breach of lease agreement.

**{¶5}** Winters also filed a motion for an "order to proceed to arbitration and to appoint a neutral arbitrator" in June 2012. Groedel opposed the motion on the grounds that: (1) local and/or state bar associations retain exclusive jurisdiction over Groedel's breach of contract alleged in the counterclaim; (2) Winters's tortious interference with a business relationship claim was not subject to arbitration because it was unrelated to the parties' agreement; and (3) Groedel's breach of lease agreement claim alleged in the counterclaim was also unrelated to the parties' agreement.

**{¶6}** The trial court denied Winters's motion and ordered that the disputes first be mediated. Winters appealed from this order in *Winters Law Firm, L.L.C. v. Caryn Groedel & Assocs.*, 8th Dist. Cuyahoga No. 98665, 2013-Ohio-169. On appeal, Winters argued the trial court erred by failing to determine whether all or part of the dispute is subject to arbitration and by denying the motion to compel arbitration without conducting a hearing. *Id.* at ¶ 6. We found that Winters's request for arbitration was made under R.C. 2711.03, which requires a hearing. Therefore, we reversed the trial court's judgment and remanded to the trial court to conduct a hearing to determine what was subject to arbitration. *Id.* at ¶ 7-8.

**{¶7}** Following our remand, Winters filed a renewed motion for an order to stay proceedings pending arbitration. Groedel opposed the motion, arguing that Winters sought to arbitrate a tort claim against her that she never agreed to arbitrate. The trial court held a hearing on Winters's renewed motion in April 2013. The trial court granted Winters's motion, finding that

[d]uring their oral argument at the hearing, [Groedel] conceded or agreed that the breach of contract claim contained in [Winters's] amended complaint, and all counts contained in [Groedel's] counterclaim are subject to, or fall within the scope of the arbitration agreement. [Groedel] maintained their position that Count II of [Winters's] amended complaint, *i.e.*, the tortious interference with a business relationship claim, was not subject to or within the scope of the arbitration agreement. However, this court finds that because the issue of privilege, or lack thereof, constitutes an element of this tort claim or an affirmative defense thereto, it cannot be maintained without reference to the co-counseling agreement or contract at issue. Therefore, all claims are subject to the arbitration agreement and no merit discovery is permitted.

{¶8} It is from this order that Groedel appeals, raising the following two assignments of error for review. For ease of discussion, we will address both assignments of error together.

### Assignment of Error One

The trial court erred and abused its discretion in granting [Winters's] motion to stay proceedings pending arbitration without affording [Groedel] a reasonable opportunity to conduct discovery.

### Assignment of Error Two

The trial court erred and abused its discretion in ruling that [Winters's] claim for tortious interference with a business relationship is subject to the parties' arbitration agreement.

### Standard of Review

{¶9} The parties dispute the applicable standard of review governing this case, both citing to decisions of this court with varying holdings in the area. We note that this court has recently addressed this dispute, explaining that the appropriate standard of

review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Generally, an abuse of discretion standard applies in limited circumstances, such as a determination that a party has waived its right to arbitrate a given dispute. *Id.*, citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103, ¶ 8. The issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review. *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.); *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12.

**{¶10}** In this case, we apply a de novo standard of review because we are reviewing the trial court's decision to grant a motion to stay after finding that the claims are subject to arbitration.

> The abuse of discretion standard of review has no application in the context of the court deciding to stay proceedings pending the outcome of arbitration because a stay in such circumstances is mandatory, not discretionary.

*N. Park Retirement Community Ctr., Inc. v. Sovran Cos., Ltd.*, 8th Dist. Cuyahoga No. 96376, 2011-Ohio-5179, ¶ 7 (recognizing that R.C. 2711.02(B) imposes a mandatory duty to stay the proceedings, leaving no discretion for the trial court upon being satisfied that the matter was subject to arbitration); *see also McCaskey* at ¶ 9. "Under a de novo standard of review, we give no deference to a trial court's decision." *Brownlee v.*

*Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, citing *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001).

<u>Arbitrability of Tortious Interference with Business Relationships Claim</u>

**{¶11}** In the instant case, the arbitration provision of the co-counseling agreement between Winters and Groedel states:

10.    DISPUTE RESOLUTION

In the event of a dispute between co-counsel regarding this agreement or the distribution of funds under the Agreement, co-counsel shall attempt in good faith to resolve the matter through discussion and, if unsuccessful, shall agree upon a neutral third party to assist them in attempting to resolve the matter informally.

If these measures are unsuccessful, the dispute shall be referred to a mutually agreed upon dispute resolution provider for binding arbitration. Co-counsel shall bear their own fees and costs for arbitration, but shall pay equally for the filing fee and arbitrator's fees regardless of the outcome of the dispute.

**{¶12}** Groedel argues the trial court erred when it ruled that Winters's claim for tortious interference with business relationships is subject to the arbitration agreement because Groedel "never agreed to arbitrate that claim and that claim is wholly unrelated to the parties' Co-Counseling Agreement[.]" Groedel contends that Winters could maintain the tort claim even if the co-counseling agreement never existed.

**{¶13}** While Ohio public policy favors arbitration, we recognize that "'"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'"" *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 11, quoting *AT&T*

*Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In *Academy of Medicine of Cincinnati*, the Ohio Supreme Court noted that it adopted the following four rules for reviewing decisions concerning a dispute's arbitrability, as set forth in *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986):

> (1) "arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit"; (2) the question whether a particular claim is arbitrable is one of law for the court to decide; (3) when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) when a "contract contains an arbitration provision, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*Id.* at ¶ 5.

{¶14} This case focuses around the first rule — whether the parties agreed to submit the tort claim to arbitration. In determining whether the parties agreed to submit a dispute to arbitration, the "'proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue.'" *Academy of Medicine of Cincinnati* at ¶ 24, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003).

{¶15} Winters's claim for tortious interference alleges that as part of the co-counsel agreement, Groedel was to pay $2,500 per month to Winters, which

represented an advance of the cases the parties expected to earn. Winters alleges Groedel breached the agreement by failing to proffer all payments due to Winters. As a result, Winters sought a business relationship with another law firm to co-counsel wage and hour cases. Winters alleges that Groedel knowingly and intentionally interfered with Winters's business relationship with the other firm by engaging in direct communications with the firm, stating that she had a right to Winters's clients and cases. Winters further alleges that Groedel's actions prevented him from maintaining a rightful business relationship with the law firm, and as a result, his business relationship with the firm was damaged.

{¶16} In *Barilla v. Patella*, 144 Ohio App.3d 524, 532, 760 N.E.2d 898 (8th Dist. 2001), we stated:

> "The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." (Citations omitted.) *Wolf v. McCullough-Hyde Memorial Hosp., Inc.* (1990), 67 Ohio App. 3d 349, 355, 586 N.E.2d 1204. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." (Citations omitted.*) A&B — Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283. "The basic principle of a 'tortious interference' action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby." *Wolf*, 67 Ohio App. 3d at 355, citing *Juhasz v. Quik Shops, Inc.*(1977), 55 Ohio App.2d 51, 57, 379 N.E.2d 235, 238.

{¶17} Winters must prove that Groedel, without a privilege to do so, induced or otherwise purposely caused the law firm not to continue a business relationship with Winters. In other words, Winters must prove that Groedel did not have a contractual right to Winters's clients and cases. If the co-counsel agreement gave Groedel the right to interfere, then she acted with privilege and Winters's claim fails.

{¶18} The co-counsel agreement between the parties specifically provides that "[i]n the event of *a dispute* between co-counsel *regarding this agreement* or the distribution of funds under the Agreement, co-counsel shall attempt in good faith to resolve the matter through discussion and, if unsuccessful * * *, the dispute shall be referred to a mutually agreed upon dispute resolution provider for binding arbitration." (Emphasis added.) The plain language of the co-counsel agreement provides for arbitration in the event of a dispute regarding the agreement. Here, the resolution of Winters's tortious interference with business relationships claim constitutes a dispute regarding the agreement, and thus, directly implicates the co-counsel agreement. Therefore, we find trial court properly determined that the tortious interference with business relationships claim is subject to arbitration.

### Discovery

{¶19} Groedel also argues that the trial court erred by not permitting her to conduct discovery. Groedel contends that discovery is essential because Winters "refused to provide a basis that would permit the trial court to determine whether the alleged business relationship even existed, let alone whether the claim based on that

alleged relationship is subject to arbitration." "This court, however, ruled in *Sasaki v. McKinnon*, 124 Ohio App.3d 613, 707 N.E.2d 9 (8th Dist.1997), that R.C. 2711.02, governing stay of proceedings pending arbitration, does not require discovery but, rather, only mandates that the court be satisfied that the dispute is governed by the arbitration provision." *Melia v. OfficeMax N. Am., Inc.*, 8th Dist. Cuyahoga No. 87249, 2006-Ohio-4765, ¶ 38.

{¶20} Here, the trial court found that "no merit discovery is permitted" because the tortious interference with business relationships claim cannot be maintained without reference to the co-counseling agreement. Groedel did not seek discovery on the enforceability of the arbitration agreement; rather, she sought discovery on the merits of the tort claim. Since Groedel's arguments did not evidence a need for discovery, the trial court was not required to allow for it. *Brownlee* at ¶ 19, citing *Melia v. OfficeMax N. Am., Inc.*, at ¶ 38.

{¶21} Therefore, the first and second assignments of error are overruled.

{¶22} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, P.J., and
KENNETH A. ROCCO, J., CONCUR