NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0518n.06

No. 21-3126

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 15, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| WESTFALL AUTO SALES, LLC; INCIDENT MANAGEMENT SOLUTIONS, OH, LLC, ) ) ) | |
| Plaintiffs-Appellants, ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY; ROBERT E. WATSON; TOWING INSURANCE SPECIALISTS, LLC, ) ) ) ) | |
| ) | OPINION |
| Defendants-Appellees. ) ) ) | |

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs, Westfall Auto Sales, LLC ("Westfall") and Incident Management Solutions, OH, LLC ("IMS"), appeal the district court's order granting Defendants' motion for summary judgment on Plaintiffs' claim for tortious interference with a business relationship. The district court held that Plaintiffs failed to establish a genuine issue of material fact because it found that the record contained neither evidence of an existing business or contractual relationship, nor facts showing that Defendants interfered with such a relationship. We **AFFIRM** for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

On May 19, 2011, Plaintiffs responded to the scene of an accident between two tanker trucks following dispatch by the Ohio State Highway Patrol ("OSHP"). One of the trucks had

been hauling hydrochloric acid in an attached trailer, which was owned by First Class Transport, Inc. ("First Class"). Plaintiffs performed clean-up and towing services following the accident, and they submitted invoices to the parties' insurers. A dispute arose regarding the reasonableness of the bill submitted by Plaintiffs to First Class' insurer, Zurich American Insurance Company ("Zurich").

Defendant Zurich hired Defendant Robert E. Watson ("Defendant Watson") to evaluate the bill. Pursuant to his evaluation as a contractor specializing in reviewing towing bills, Defendant Watson spoke with Plaintiffs by phone on three occasions. During those phone calls, the parties disputed the total amount that Defendant Zurich owed Plaintiffs, and the parties also challenged one another's respective accounts of the facts underlying the bill.

On October 5, 2012, the Ohio Department of Insurance ("ODI") received a complaint alleging that IMS had engaged in misconduct including stealing diesel fuel and generating "outrageous" bills. (Traska Aff., R. 49-3, PAGE ID # 381.)

### B. Procedural History

Plaintiffs initially filed this case in 2011, in Ohio state court. On October 5, 2017, the court dismissed the case without prejudice, and Plaintiffs subsequently refiled it in the same court on October 5, 2018. Defendants timely removed the case to the Southern District of Ohio pursuant to 28 U.S.C. §§ 1441 and 1446. As they did in state court, Plaintiffs asserted fraud and tortious interference claims. However, Plaintiffs' fraud claim is not at issue on appeal.

As the bases for their claims, Plaintiffs cited to their conversations with Defendant Watson and Defendant Watson's alleged complaint filed with the ODI, as well as the events allegedly stemming from that complaint. They sought compensation for costs and attorneys' fees in addition to punitive damages.

After an attempt to mediate the case, the parties proceeded to discovery in August of 2019. On March 17, 2020, Defendants filed a summary judgment motion. As to Plaintiffs' claim for tortious interference with a business relationship, Defendants argued that the elements were not met under Ohio law because:

> There is [sic] no allegations that Mr. Watson induced anyone to do anything, or that anyone did anything based on his actions. There are also no specifics as to what specific business may have been interfered with, and it is well settled that allegations of general damage to business do not meet the high pleading standards for tortious interference claims.

(Defs.' Mot. Summ. J., R. 41, PAGE ID # 121.) Defendants also argued that "there is no evidence that Watson induced or otherwise caused a third person not to enter into or continue a perspective [sic] relationship with Westfall." (*Id.* at PAGE ID # 122.)

In an affidavit filed along with Defendants' summary judgment motion, Defendant Watson stated that he did "not recall calling the Ohio Department of Insurance regarding the Westfall Towing bill nor ha[d] [he] been shown any paperwork or complaint forms that indicate that [he] made a call to or filed a complaint with the Department of Insurance." (Watson Aff., R. 41-1, PAGE ID # 128 ¶ 29.) Relatedly, he added that he "did not contact the Ohio Environmental Protection Agency regarding Westfall Towing." (*Id.* at ¶ 30). However, Defendant Watson admitted that he had previously brought complaints against other towing companies before similar regulatory authorities in other states. Defendant Watson testified that, on at least one occasion, he filed a complaint with a state regulator and withdrew it once his client's corresponding towing bill was resolved.

Plaintiffs' response to Defendants' summary judgment motion was due on April 8, 2020. Plaintiffs asked for, and the district court granted them, two extensions, thus postponing the

deadline to May 4, 2020. But Plaintiffs did not file their response, along with a motion for leave to file it, until July 8, 2020. Plaintiffs' response was thus more than two months late.[1]

In their motion for leave to file their response, Plaintiffs cited their cause as being "of a sensitive nature" that "[counsel] would prefer, if possible, to discuss via teleconference." (Mot. Leave to File Opp'n Summ. J. Inst., R. 50, PAGE ID # 438–49.) Accordingly, the court held a telephone status conference on July 14, 2020. That same day, Plaintiffs filed an executed affidavit, from Mr. Andrew Myers, which had previously been attached as "[a] draft" in Plaintiffs' July 8, 2020, response.[2] (Notice Filing Executed Aff. Andrew Myers, R. 53, PAGE ID # 442–45.) Despite Defendants' opposition to Plaintiffs' motion for leave to file their July 8, 2020, response,[3] the court ultimately granted Plaintiffs' motion on July 21, 2020. The court noted that its decision to allow Plaintiffs' late response was based on counsel's extraordinary and compelling personal and family circumstances.

In their response, Plaintiffs emphasized the ODI complaint allegedly made by Defendant Watson. They underscored that Defendant Watson could not "offer any affirmative statement that it was not he who initiated the [ODI] investigation," and, correspondingly, that the report to ODI

---

[1] Of note, these delays occurred at the peak of initial national shutdowns due to the COVID-19 pandemic. *See generally* Phillip Bump, *Nearly all Americans are under stay-at-home orders. Some may have come too late.*, Apr. 2, 2020, Wash. Post, *available at* https://www.washingtonpost.com/politics/2020/04/02/nearly-all-americans-are-under-stay-at-home-orders-some-may-have-come-too-late; Marc Fisher, *U.S. death toll has reached 100,000.*, May 27, 2020, Wash. Post, *available at* https://www.washingtonpost.com/graphics/ 2020/national/100000-deaths-american-coronavirus.

[2] Plaintiffs filed the executed affidavit and provided notice to opposing counsel on July 14, 2020, the day of the hearing. Accordingly, the signed affidavit appeared on the docket before the district court granted Plaintiffs' leave to file their response. The filing did not, however, indicate that Plaintiffs sought leave to file the executed affidavit.

[3] In their July 17, 2020, opposition, Defendants did not object to—nor did they mention in any way—the fact that the signed and executed affidavit was not contained in Plaintiffs' July 8, 2020, response. Nor did they make an argument as to the executed affidavit filed on July 14, 2020.

initiated a sequence of events wherein regulators allegedly intervened to stop new clients from hiring Plaintiffs.  (*Id.* at PAGE ID # 354, 357–58.)

First, Plaintiffs claimed that the ODI records showed that ODI and the Ohio Environmental Protection Agency ("OEPA") communicated with one another about the spill, and that corresponding OEPA documentation allegedly showed that OEPA "appeared to intervene to stop a spill generator from hiring IMS."  (*Id.* at PAGE ID # 358.)  They cited to a page of the appended OEPA records related to a hazardous spill that took place in Belmont County, Ohio in February of 2012.

The OEPA records indicate that an OEPA Night Duty Officer ("NDO") informed an OEPA On-Scene Coordinator ("OSC") that Plaintiff IMS had contacted the NDO.  Subsequently, the OSC asked the NDO whether IMS had been hired as the clean-up contractor.  The NDO asserted that no contractor had been hired.  Next, the OSC contacted Plaintiff IMS, but was unable to reach the IMS employee who had contacted the NDO.  The OSC was then contacted by Mister "P" Express, Inc. ("Mr. 'P'"), the vehicle operator that caused the spill.  Mr. "P" told the OSC that Mr. "P" was under the impression that the OSC was, in fact, a clean-up contractor.  The OSC explained that this was not the case and that Mr. "P" needed to contact and hire a clean-up contractor.  The OSC later gave Mr. "P" a list of contractors, and Mr. "P" confirmed that it had hired "Zemba Brothers," not IMS, from the provided list.

Additionally, Plaintiffs argued that "[b]y mid 2013, word was out to wreckers in southeast Ohio that the Ohio State Highway Patrol would not allow any wrecker to subcontract with IMS."  (Resp. in Opp'n Defs.' Mot. Summ. J., R. 49, PAGE ID # 358 (citing Andrew Myers Aff., R. 49-4, PAGE ID # 436).)  They referenced an affidavit allegedly written by Mr. Andrew Myers ("Andrew Myers Affidavit"), a responder from Pinetree Towing.  The affidavit indicated that a

sergeant of the OSHP told Myers that if Pinetree Towing intended to do business with Plaintiff IMS, OSHP would no longer contract with Pinetree Towing.

Defendants filed a reply. In it, they claimed that Plaintiffs failed to prove the elements of tortious interference with a business relationship. They also questioned the admissibility of Plaintiffs' evidence.[4]

The district court granted Defendants' summary judgment motion on both of Plaintiffs' claims. *Westfall Auto Sales, LLC et al. v. Zurich Am. Ins. Co.*, No. 2:18-cv-1448, 2021 WL 86873, at *5 (S.D. Ohio Jan. 11, 2021). As to Plaintiffs' claim for tortious interference with a business relationship, the court determined that Plaintiffs failed to establish a genuine dispute of material fact. *Id.* It found that there was neither evidence of a business or contractual relationship, nor evidence showing that Defendants interfered with such a relationship. *Id.* The court specifically noted that it declined to consider the Andrew Myers Affidavit because the document was unsigned. *Id.* at *5 n.7. Plaintiffs appealed.

## II. DISCUSSION

### A. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (citing *Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 752 (6th Cir. 2016)). "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(a)). A material fact is "one 'that might affect the outcome of the suit,' and a

---

[4] However, Defendants once again failed to make an argument regarding the unsworn nature of the Andrew Myers Affidavit filed with Plaintiffs' July 8, 2020, response.

genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## B.  Analysis

The district court did not err in granting Defendants' summary judgment motion.  It concluded that "there is no evidence of a business or contractual relationship or that Mr. Watson, or anyone else from Zurich or Towing [Insurance Specialists, LLC], interfered with such a relationship." *Westfall Auto Sales*, 2021 WL 86873, at *5.  In their appeal, Plaintiffs nevertheless argue that they presented two pieces of evidence raising a genuine issue of material fact: first, records allegedly showing that Defendant Watson's purported complaint to the ODI caused an IMS contract to be broken, and second, an affidavit allegedly showing that the same complaint altogether prevented a future contract.

In Ohio, the elements of tortious interference with a business relationship are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 949 (S.D. Ohio 2003) (quoting *Barilla v. Patella*, 760 N.E.2d 898, 904 (Ohio Ct. App. 2001)).  As the district court noted, this tort "includes intentional interference with prospective contractual relations not yet reduced to contract." *Westfall Auto Sales*, 2021 WL 86873, at *5 n.6 (citing *Miami Valley Mobile Health Servs. v. ExamOne Worldwide*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012)).

Plaintiffs argue that the "concepts of prospective business and economic advantage are included within the Ohio tort" for tortious interference with a business relationship.  (Appellants' Br. 13.)  They do so apparently to underscore their argument that the Ohio tort covers the alleged

impending contract between IMS and Pinetree Towing, which was purportedly interfered with by the OEPA, as well as other forthcoming business relationships that were "lost." (*See id.* at 19, 23.) Plaintiffs also ask this Court to determine that *negligent* interferences are sufficient for the same reasons. This Court, however, need not decide these questions.[5] Indeed, the district court agreed with Plaintiffs that, in Ohio, tortious interference with a business relationship includes prospective contractual relations not yet reduced to contract. *Westfall Auto Sales*, 2021 WL 86873, at *5 n.6. And the tort's intent requirement is clear. *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 781 (Ohio Ct. App. 2002) (noting that tortious interference must be intentional because "Ohio does not recognize negligent interference with a business relationship").

### i. ODI and OEPA Records

The ODI and OEPA records cited by Plaintiffs do not establish a genuine issue of material fact. Drawing all reasonable inferences in their favor, the records only show that ODI and OEPA collaborated on an investigation following an anonymous complaint about IMS, and separately, that an independent party, Mr. "P," chose not to contract with IMS following a hazardous spill that occurred on February 18, 2012. Taken as true, those facts are insufficient to generate a dispute as to "an intentional interference causing breach or termination of [a] relationship" that Defendants knew about. *Reed Elsevier, Inc*, 269 F. Supp. 2d at 949. Plaintiffs fail to draw a clear connection between Defendants, the ODI complaint, and Mr. "P"'s decision to hire a clean-up contractor other than IMS.

---

[5] This is especially true as to Plaintiffs' argument regarding the "concepts of prospective business and economic advantage" because Plaintiffs did not bring this specific question before the district court. (Compl., R. 2, PAGE ID # 36–38; Resp. Opp'n Defs.' Mem. Summ. J., R. 49, PAGE ID # 363–64.) Indeed, in their response to Defendants' summary judgment motion, Plaintiffs only discussed an alternative negligence theory for cases in which a party negligently identifies another as having committed a crime, which was not initially pleaded and is inapplicable here.

First, Plaintiffs cannot show that Defendant Watson filed the ODI complaint. Indeed, they fatally concede that it was filed anonymously. To cure this, Plaintiffs cite to records showing that Defendant Watson filed similar complaints in other jurisdictions on two different occasions. Even if admissible, those references are insufficient because they do not show that on *this* occasion, Defendant Watson filed the anonymous ODI complaint.

Second, even if Plaintiffs had proof that Defendant Watson filed the ODI complaint, they cannot establish that the complaint caused OEPA's alleged actions on February 18, 2012. Plaintiffs argue that ODI and OEPA collaborated following the May 19, 2011, accident, and that OEPD intervened in February of 2012 by making "three telephone calls to a party that had already hired IMS to suggest contractors on the 'approved list.'" (Appellants' Br. 18; Resp. Opp'n Defs.' Mem. Summ. J., R. 49, PAGE ID # 354–58.) But the records referenced by Plaintiffs do not, in fact, show that. There is no evidence that Mr. "P" "had already retained IMS" at the time that OEPA contacted Mr. "P." (Appellants' Br. 19.) To the contrary, the records indicate that Mr. "P" was unaware that it needed to hire a clean-up contractor *at all* until OEPA contacted Mr. "P"'s representative. Additionally, there is no evidence showing that IMS was not, in fact, one of the contractors on the list provided to Mr. "P," or that OEPA excluded IMS from that list because of any investigation wrongfully prompted by Defendants. At best, the records show that ODI conducted an investigation in cooperation with the OEPA; that on February 18, 2012, OEPA provided Mr. "P" with a list of possible contractors to hire following a spill; and that Mr. "P" hired a contractor other than IMS. The "connections" between Defendants, the ODI complaint, the list provided by OEPA to Mr. "P," and Mr. "P"'s decision to hire a contractor other than IMS are, simply, missing. (*See* Appellants' Reply 1.)

Finally, although tortious interference with a business relationship in Ohio "includes intentional interference with prospective contractual relations *not yet reduced to contract*," that language anticipates relationships not yet formalized *at the time of the alleged interference*, not all possible past and future business relationships. *Reed Elsevier, Inc.*, 269 F. Supp. 2d at 949 (emphasis added); *Barilla*, 760 N.E. 2d at 904 (noting that the basic principle of a tortious interference action is that liability attaches when a party induces or purposely causes a third party to discontinue a business relationship with another). Here, the events giving rise to the possibility of a business relationship between IMS and Mr. "P" took place months before the anonymous complaint was officially filed. Accordingly, taken together with the missing nexus between Defendants and the ODI complaint, the underlying events are beyond the scope of the Ohio tort.

No reasonable jury could determine that Defendants tortiously interfered with Plaintiffs' business relationship based on these facts. Therefore, the ODI and OEPA records emphasized by Plaintiffs do not support reversal of summary judgment.

### ii. Andrew Myers Affidavit

#### a. District Court's Failure to Consider the Executed Affidavit

The district court declined to consider the Andrew Myers Affidavit because it was unsigned. *Westfall Auto Sales*, 2021 WL 86873 at *5 n.7. Plaintiffs argue that this was in error. Specifically, Plaintiffs argue that "[t]he trial court *mistakenly assumed* that the blank affidavit attached to the opposition *had not been later executed and filed*," adding that "the trial court granted leave to file the opposition brief a week after the executed affidavit had been filed." (Appellants' Br. 17 (emphases added).) They claim that "[t]he only view of the docket in this matter that makes sense is that when the trial court ruled on the motion several months after it granted leave, [it] overlooked that the executed affidavit was on the record." (Appellants' Reply

1.) Defendants, on the other hand, argue that "the only evidence properly in the record is the unsigned affidavit" because Plaintiffs did not request leave to file the signed version. (Appellees' Br. 6.)

The district court did not err when it declined to consider the unsigned affidavit. Indeed, the Southern District of Ohio's Local Civil and Criminal Rules indicate that all opposition memoranda "shall be filed within twenty-one days after the date of service of the motion," and they affirm that "[n]o additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown." S.D. Ohio Loc. Civ. & Crim. R. § 7.2(a)(2). Here, the district court granted Plaintiffs' motion for leave to file their response filed on July 8, 2020. (Op. & Order Grant. Mot. Leave to File Opp'n Summ. J. Inst., R. 55, PAGE ID # 449 ("The matter before the Court is Plaintiffs' . . . Motion for Leave to File Opposition to Summary Judgment Instanter. (ECF No. 50.) . . . [T]he Court told counsel for Plaintiff that further delays in the case and noncompliance with deadlines cannot be tolerated.").) Because the executed affidavit was not attached to the July 8, 2020, response, the district court did not erroneously decline to consider it.

### b. Merits of the Affidavit

Even if Plaintiffs' executed affidavit were properly before the Court, it does not establish a genuine issue of material fact. Drawing all reasonable inferences in favor of Plaintiffs, the affidavit only shows that, on one occasion, a sergeant of the OSHP told a towing company that it would not be hired if it brought IMS into its clean-up job following a truck accident. Taken as true, those facts are also insufficient to generate a dispute as to "an intentional interference causing breach or termination of [a] relationship" about which Defendants knew. *Reed Elsevier, Inc.*, 269 F. Supp. 2d at 949. Plaintiffs once again fail to draw a clear connection between Defendants, the ODI complaint, and this incident.

Indeed, Plaintiffs cannot show that the anonymous complaint improperly prompted the OSHP sergeant's statement to Pinetree Towing on June 24, 2013. Nor do Plaintiffs provide evidence demonstrating that the sergeant's statement interfered with a "prospective contractual relatio[n] not yet reduced to a contract" at or around the time the complaint was filed. *Miami Valley Mobile Health Servs.*, 852 F. Supp. 2d at 942. The event giving rise to this business opportunity did not occur until June of 2013, one month after ODI's investigation officially closed. As a result, the incident is too attenuated for a reasonable jury to determine that it was the result of Defendants' tortious interference.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order granting Defendants' summary judgment motion on Plaintiffs' claim for tortious interference with a business relationship.